**TSB EXCO, INC., Appellant,**

v.

**E.N. SMITH, III ENERGY CORP., et al, Appellees.**

**No. 6–90–074–CV.**

Court of Appeals of Texas, Texarkana.

July 16, 1991.

On Motion for Rehearing Sept. 4, 1991.

Rehearing Granted in part and Overruled in part Sept. 4, 1991.

Further Rehearing of Appellants and Appellees Overruled Oct. 15, 1991.

Dick Watt, Lynne Liberato, Haynes and Boone, Houston, Timothy George, McGinnis, Lochridge & Kilgore, Austin, for appellant.

Edwin E. Buckner, Jr., Sandlin & Buckner, Marshall, for appellant E.N. Smith.

James O. Faires, Faires & Garrett, Commerce, for Sidney Taylor, Jean Taylor, Jenny Moore, Peggy Hogan and Bryant L. Moore.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

PER CURIAM.

In this appeal from a declaratory judgment we must decide if the timely delivery of a bank check was effective to extend the term of an oil and gas lease when the extension clause of the lease provides only that it may be exercised by the "payment" of a sum of money. We conclude that it was effective to extend the lease, and we reverse the judgment below which held otherwise.

On July 6, 1983, the landowners, Sidney Taylor, Jean Taylor, Peggy Hogan, Bryant Moore and Jenny Moore executed oil and gas leases to Gene McKnight covering two tracts of land totaling 198.5 acres in Bowie County. The leases contain standard royalty clauses and delay rental clauses.

The delay rental clauses provide that payment or tender of rentals "may be made by check or draft of Lessee delivered or mailed to the authorized depository bank or to Lessor (at the address last known to Lessee) on or before such date for payment, and the payment or tender will be deemed made when the check or draft is so delivered or mailed." The royalty clauses provide that payment of royalty "may be made by check or draft of Lessee to the parties entitled to receive royalties in the same manner as provided for 'rental' payments under Paragraph Four (4) hereof."

The option to extend the term of the lease is contained in Paragraph 16, which, along with three other numbered paragraphs, is contained in a typewritten "rider" attached to the printed lease form. Paragraph 16 reads as follows:

> Lessee is hereby given the option, to be exercised prior to the date on which this lease or any portion thereof would expire in accordance with its terms and provisions, of extending this lease for a period of five (5) years as to all or any portion of the acreage then held hereunder which would expire unless so extended, *the only action required by Lessee to exercise this option being the payment to Lessor (or for Lessor's credit to the depository bank named herein)* of the additional consideration of the sum of $75.00 per acre for each acre so extend-

> ed, *which payment shall cover (the first year of) the extended term. No rental payments shall be due on the acreage so extended during the period following such payment and ending on the following anniversary date of this lease, but annaul (sic) rentals shall be due on or before such following anniversary date and succeeding anniversary dates thereafter.* If this lease is extended as to only a portion of the acreage then covered hereby, Lessee shall designate such portion by a recordable instrument.

(Emphasis added.) As will be noted, Paragraph 16 itself does not expressly provide for payment by check, but simply provides that the lease may be extended by "the payment to Lessor (or for Lessor's credit to the depository bank named herein) of the additional consideration of the sum of $75.00 per acre...."

The leases were assigned by McKnight to Texaco and ultimately by Texaco to TSB Exco, Inc.

On July 1, 1988, a representative of TSB delivered to Sidney and Jean Taylor at their residence personal checks in the correct amount to extend the term of the leases. Neither the Taylors nor any other landowner cashed any check. Smith Energy had previously contacted the Taylors on June 20 and obtained an option to take a lease on the same property covered by the TSB leases when and if those leases expired. When Smith Energy's agent discovered that TSB had delivered checks in payment of the extension, he advised the Taylors not to cash the checks because he thought they might not constitute proper tender or payment. He suggested that the Taylors hold the checks until after the extension period expired on July 6. The Taylors did that, and on July 7 they returned the checks uncashed.

After the time to extend the lease expired, the landowners executed new leases covering the property to Smith Energy. When TSB officials discovered that the landowners had refused the checks, it issued cashier's checks for the extension money to the depository bank named in the leases, but the bank refused to accept the

checks based on instructions from the Taylors.

TSB filed suit against Smith Energy and the lessors for breach of contract, tortious interference with its leases, and for declaratory judgment that the leases had been extended by its tender of the checks. Trial was to the court without a jury.

In its findings of fact, the trial court found, among other things, that, on July 1, 1988, TSB, acting through its agent, delivered checks to the Taylors for the appropriate amount necessary to extend the leases as provided in Paragraph 16; at all pertinent times the drawer of the checks had sufficient funds on deposit in the drawee bank to pay the checks; when the checks were presented the landowners made no demand for cash payment, nor did they demand cash at any time before the expiration of the option; the landowners did not deposit or negotiate the checks; the landowners did not explicitly authorize payment of the option by check and did not waive any of their known rights; checks are used for payment of obligations in oil and gas leases, including option payments, in the ordinary course of business; the landowners had an agreement among themselves that all payments relating to their leases would be made at the Taylors' address, which was specified in the leases; and Smith Energy did not tortiously interfere with TSB's leases.

Based on its findings of fact and its understanding of the applicable law, the trial court then concluded that the checks did not constitute a valid tender or payment; the landowners did not waive any right to require cash payment and were not estopped to demand cash; and Smith Energy had not tortiously interfered with TSB's leases. Accordingly, it rendered judgment that TSB take nothing.

On appeal, TSB contends, among other things, that its delivery to lessors of checks for the correct amount of money prior to the expiration of the option date constituted payment within the meaning of Paragraph 16 of the leases so as to extend the leases as therein provided. We agree.

■ There are authorities holding that when a contract requires the payment or tender of money, cash is required and a check will not constitute legal tender or payment unless there is an agreement to accept it as payment. *Fillion v. David Silvers Co.*, 709 S.W.2d 240 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Dunn v. Ligon*, 430 S.W.2d 704 (Tex.Civ. App.—Corpus Christi 1968, no writ); *Pitts v. G.F.C. Corporation*, 228 S.W.2d 261 (Tex.Civ.App.—Dallas 1950, no writ); *Ward v. Tadlock*, 183 S.W.2d 739 (Tex.Civ. App.—Fort Worth 1944, no writ); *Renchie v. John Hancock Mutual Life Ins. Co.*, 174 S.W.2d 87 (Tex.Civ.App.—Fort Worth 1943, no writ); *Jefferson Standard Life Ins. Co. v. Lindsey*, 94 S.W.2d 549 (Tex.Civ.App.—Eastland 1936, writ dism'd); *Friends in Need Society v. Peterson*, 9 S.W.2d 1110 (Tex.Civ.App.—Austin 1928, writ ref'd). Other authorities have recognized a rule that a check may constitute legal tender if it is shown that the drawer had sufficient funds in the bank to pay it and that the check would be paid when, in the usual course of business, it is presented to the drawee bank. *Waggoner Bank & Trust Co. v. Gamer Co.*, 113 Tex. 5, 213 S.W. 927 (1919); *Moore v. Copeland*, 478 S.W.2d 573 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.); *Cornelius v. Cook*, 213 S.W.2d 767 (Tex.Civ.App.—Eastland 1948, no writ); *Tatum v. Fulton*, 218 S.W. 1088 (Tex.Civ.App.—El Paso 1920, no writ).

The modern and the better rule, however, is set out in RESTATEMENT (SECOND) OF CONTRACTS § 249 (1981):

> Where the payment or offer of money is made a condition of an obligor's duty, payment or offer of payment in any manner current in the ordinary course of business satisfies the requirement unless the obligee demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

Although this section has not been specifically adopted by statute or decision in Texas, it was designed to apply the same rule to all contracts that Section 2–511(2) of the Uniform Commercial Code applies to commercial paper. *See* Comment and Reporter's Note, RESTATEMENT (SECOND)

OF CONTRACTS § 249 (1981). Texas has statutorily adopted Section 2–511(2) of the U.C.C. as Tex.Bus. & Com.Code Ann. § 2.511(b) (Vernon 1968), indicating a legislative policy decision favoring the rule.

An oil and gas lease is a contract and must be interpreted as a contract. *Skelly Oil Company v. Archer,* 163 Tex. 336, 356 S.W.2d 774 (1961). We adopt Section 249 of the Restatement as the rule applicable to contractual obligations for the payment of money.

■ The trial court here found that checks are used for payment of obligations in oil and gas leases, including option payments, in the ordinary course of business. Therefore, since the landowners did not demand payment in cash and extend an appropriate time to allow TSB to comply, TSB's delivery of the checks in a timely and proper manner constituted payment within the meaning of Paragraph 16 of the leases.

■ We also find that the leases themselves authorized payment for the extension by check.

As noted earlier, an oil and gas lease is a contract and is to be interpreted as a contract. Unless the contract is ambiguous, its interpretation is a question of law for the court. *Lewis v. East Texas Finance Co.,* 136 Tex. 149, 146 S.W.2d 977 (1941). The main object is to discover the intention of the parties as it is expressed in the contract. *McMahon v. Christmann,* 157 Tex. 403, 303 S.W.2d 341 (1957); *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617 (1954). In doing that, we must look to the four corners of the instrument, harmonize all parts of it if that is reasonably possible, and avoid any construction of the instrument that would be unreasonable or would render other portions of the instrument meaningless or ineffective. *Gibson v. Turner,* 156 Tex. 289, 294 S.W.2d 781 (1956); *Lab Oil Company v. Bentz,* 380 S.W.2d 846 (Tex.Civ.App.—Corpus Christi 1964, no writ).

Regardless of the legal meaning of payment, the parties to an oil and gas lease are free to define what may constitute payment for the purposes of that lease. *Spruill v. Lone Star Gas Co.,* 253 S.W. 599 (Tex.Civ.App.—El Paso 1923, writ dism'd); 58 Tex.Jur.3d *Payment* § 8 (1988). The leases here, in all other cases except Paragraph 16 where they require any type of payment, explicitly provide that it may be made by check.

Paragraph 16 appears to be a supplement to the delay rental paragraph. Like the delay rental provision, it allows an extension of the lease by the payment of money instead of by drilling or production. It provides, in effect, that a payment according to its terms will be in lieu of a delay rental, because it states that the extension payment shall cover the *first year* of the extended term and that no rental payment will be due for the year following that payment. It provides for the resumption of delay rentals for the following four years of the term. It also allows for payment at the "depository bank," a term which originates in the delay rental paragraph.

Considering the leases as a whole, it appears that Paragraph 16 is tied to and is to be considered with the delay rental provision contained in Paragraph 4. As that provision specifically provides that payment may be made by check, we conclude that the intention of the leases was to allow payment under Paragraph 16 by check as well. Any other construction would, in our judgment, be a strained and unreasonable one. It would be a strained construction indeed to say that the parties meant that payment of the first, second and third, as well as the fifth, sixth, seventh and eighth payments required to keep the lease alive absent drilling or production could be made by check, but that the fourth one must be paid in cash. It is clear, we think, that the parties intended that the option payment, being somewhat in the nature of a delay rental, could be paid by check, as is expressly provided for the other delay rentals and for the royalty.

■ Smith Energy contends that we should not construe the extension provision with the delay rental and other provisions, arguing that since Paragraph 16 is a typed

provision it controls over the printed provisions such as Paragraph 4. That rule of construction, however, applies only where there is a *conflict* between a printed provision and a typed or handwritten provision. *Southland Royalty Co. v. Pan American Petroleum Corp.*, 378 S.W.2d 50 (Tex. 1964); *Kidd v. Hickey*, 237 S.W.2d 389 (Tex.Civ.App.—El Paso 1950, writ ref'd n.r.e.); 55 Tex.Jur.3d *Oil and Gas* § 153 (1987). There is no conflict between the provisions here. Paragraph 16 does not say that the extension payment *may not* be made by check. It simply uses the word "payment," which is also used with respect to delay rentals. The provisions can be harmonized, as we have indicated.

■ Smith Energy also argues that since the lessee prepared the leases we should construe them against the lessee and hold that payment must be in cash. The rule requiring a construction against the lessee does not apply here. It applies only when the contract is ambiguous. *Texas Co. v. Parks*, 247 S.W.2d 179 (Tex.Civ.app.—Fort Worth 1952, writ ref'd n.r.e.); *Bouldin v. Gulf Production Co.*, 5 S.W.2d 1019 (Tex. Civ.App.—Fort Worth 1928, writ dism'd); 55 Tex.Jur.3d *Oil and Gas* § 157 (1987). The leases here are not ambiguous. Furthermore, the rule of construction against the lessee does not apply with respect to provisions of the lease which would cause a forfeiture. *York v. McBee*, 308 S.W.2d 951 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.); *Colby v. Sun Oil Company*, 288 S.W.2d 221 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.); 55 Tex.Jur.3d *Oil and Gas* § 157.

■ Smith Energy also contends that the checks were not sufficient to constitute tender or payment because the payor was Mike Rogers Drilling Company, rather than the lessee named in the lease. The trial court did not find that the checks were improper in that regard. If they were, Paragraph 8 of the leases would cure any defect. It provides that any payment, including but not limited to delay rentals and shut in royalty which is erroneous as to *parties*, shall nevertheless be sufficient to comply with the lease terms, if made in good faith and with reasonable diligence. The evidence shows as a matter of law that the checks tendered here met those requirements.

The judgment of the trial court is reversed. Judgment is here rendered that the TSB leases are in full force and effect and that Smith Energy's leases are not valid. The remainder of the cause is remanded to the district court to determine the amount of extension payments and suspended delay rental payments to which the landowners are entitled to recover from TSB for the period from July 6, 1988 through July 6, 1991, and to determine the issues of damages and attorney's fees, if any, to which TSB may be entitled.

It is so ordered.

## ON MOTION FOR REHEARING

In their motion for rehearing Smith Energy and the landowners complain of our remanding the case for determination of attorney's fees to which TSB may be entitled. The motion correctly points out that the trial court denied attorney's fees to any party as to the declaratory judgment action, and the denial has not been challenged on appeal in any point of error. TSB did not prevail on its other causes of action and thus is not entitled to attorney's fees under TEX.CIV.PRAC. & REM.CODE ANN. § 38.001. The issue of attorney's fees is therefore final.

Smith and the landowners also challenge our remanding the case to determine "the damages, if any, to which TSB may be entitled." We remanded the cause for such a determination because, since we held the Smith leases to be invalid, TSB would have a claim for damages resulting from the cloud on its title represented by those invalid leases. *See Reaugh v. McCollum Exploration Co.*, 139 Tex. 485, 163 S.W.2d 620 (1942). That issue had not been tried and would have been a separable issue susceptible to remand. TEX.R.APP.P. 81(b)(1). We did not remand for a determination of damages for tortious interference or conspiracy. The trial court found against TSB on those claims, and we overrule TSB's points complaining of the

court's action in that regard. As to the cloud on title issue, we find on further examination of the record that TSB has not pleaded for damages from the cloud on its title—only that the cloud be removed. As our judgment removes the cloud, the cause will not be remanded for a trial on any aspect of that issue.

The motion also argues that we have used RESTATEMENT (SECOND) OF CONTRACTS § 249 to explain an ambiguity in the lease provisions, while at the same time holding that the leases are not ambiguous. That is incorrect. We did not apply the Restatement to explain an ambiguity. The Restatement rule does not apply to ambiguities. It simply defines what legally constitutes payment when an obligation is to be discharged by money. There would be no need to use the Restatement rule if the leases were ambiguous, because if they were, extraneous evidence would be admissible to show what the parties intended would constitute payment and that intention would control over the legal definition. The Restatement rule states what constitutes payment in the absence of an agreement to the contrary.

The motion also takes us to task for failing to use the *expressio unius est exclusio alterius* rule of construction. That rule applies where one or more things of a *class* are mentioned and others of the same class are not mentioned, but all would be included had none been mentioned. 3 A. CORBIN, CORBIN ON CONTRACTS § 552, at 206 (1960); 14 TEX.JUR.3d *Contracts* § 212 (1981), and cases there cited. That rule does not apply here. The lease provisions involved here do not mention a class of things. The delay rental provision of the leases simply *defined* what would constitute payment. Once the term is defined, no rule of law or construction requires that it be redefined every time the word payment is used.

We are also criticized for failing to follow a holding of *Baucum v. Great American Ins. Co. of New York*, 370 S.W.2d 863 (Tex.1963). That case held, *inter alia*, that an offeree has no duty to speak or demand alternative means of payment when presented with an *invalid* tender. That was not the case here, however. By virtue of the Restatement rule and the lease provisions, TSB's tender of the option money was *valid*, not invalid. As it was a valid tender, it satisfied the payment obligation of the leases.

The motion for rehearing is granted in part and overruled in part. The judgment is reversed in part, and judgment is here rendered that the TSB leases are in full force and effect and that Smith Energy's leases are not valid. That portion of the judgment denying attorney's fees and damages to TSB is affirmed. The remainder of the cause is remanded to the trial court to determine the amount of extension payments and suspended delay rental payments to which the landowners are entitled to recover from TSB for the period from July 6, 1988 through July 6, 1991.

It is so ordered.