NUMBER 13-98-652-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


COASTAL OIL & GAS 

CORPORATION AND COASTAL 

OIL & GAS USA, L.P.
, Appellants,


v.



BARRY COATES ROBERTS AND 

GEORGE L. STIEREN, TRUSTEES 

OF THE COATES ENERGY TRUST, 

AND COATES ENERGY 

INTERESTS, LTD.
, Appellees.

___________________________________________________________________


On appeal from the 370th District Court


of Hidalgo County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Rodriguez



 This is an appeal from a summary judgment terminating a gas
lease for failure to pay royalties. By three issues, Coastal Oil & Gas
Corporation and Coastal Oil & Gas USA, L.P. (Coastal)(1) contends the
trial court erred in granting summary judgment and terminating the
lease because there were fact issues as to whether it wrongfully or
unreasonably withheld royalties after sufficient notice. We affirm.

 Coates Energy Trusts and Coates Energy Interests, Ltd. (Coates)
and Coastal executed several oil and gas leases in Hidalgo County in
which Coates was a lessor and Coastal was a lessee. In 1992, the
parties executed two gas leases designated leases "E" and "F." In
1993, Coates filed suit against Coastal, seeking damages for, inter alia,
underpaid royalties on various leases. The suit did not initially involve
leases E or F. The litigation proceeded with Coates amending their
petition numerous times and Coastal filing several motions for summary
judgment. 

 The instant appeal arises from termination of the F lease for failure
to pay royalties. Payment of royalties under the F lease was expressly
governed by paragraph three of the lease, which provided:

 Royalties and other payments for production shall
be due and owing to Lessor within 120 days from
the date of first production, and thereafter such
payments shall be due on or before the end of the
second calendar month following the month in
which the production for which the royalties or
payments are to be made are sold and delivered. 
If Lessee wrongfully or unreasonably withholds
any such payment or payments due to Lessor for
a period of thirty (30) days after written demand
for payment is made by Lessor on Lessee at the
above address (or other such address as made by
specified in writing hereafter by Lessee), at the
election of Lessor this lease may be terminated.

 As part of the F lease, Coastal drilled a well known as F-6, which
began producing gas on November 19, 1997. On February 25, 1998,
Coastal sent a letter and a division order to all interested owners of the
F-6 well, with a statement that they would pay royalties upon receipt
of the completed division order. Coates did not return the division order
to Coastal. 

 Under the terms of the lease, royalties were due by March 19,
1998, which was 120 days from the date of first production. Coastal
did not pay royalties on the F-6 well by March 19, 1998; consequently,
Coates sent Coastal a written demand for payment on March 24, 1998. 
The demand stated:

 Plaintiffs hereby make demand for all royalties
due and owing pursuant to each paragraph three
of the (a.) Coates "E" lease and (b.) Coates "F"
Lease. Plaintiffs demand payment in full from
each separate defendant, their proportionate
share of all amounts due. You have thirty (30)
days, after receipt of this letter, to pay said
amounts. We appreciate your immediate
attention to these matters.

 Coastal responded with a written letter on April 21, 1998, stating
they had and would continue to pay royalties on the E and F leases. 
Coastal informed Coates that its written demand was "insufficient,
deliberately vague and written in such a way as to keep [Coastal] . . .
from being able to adequately respond." According to Coastal, the
written demand did not explain the amounts owed, how it had
improperly calculated royalties, or how Coates wished such royalties to
be calculated. 

 On May 4, 1998, Coates notified Coastal that they were
terminating the F lease pursuant to the terms of the lease, as more than
thirty days had elapsed since their written demand and Coates had not
received royalties owed on the F lease. Coates filed its fifteenth
amended petition in the suit originally filed in 1993, alleging that the F
lease had terminated based on the failure to pay royalties on the F-6
well. Coates also filed a motion for summary judgment, seeking to
terminate the F lease based upon Coastal's "wrongful or unreasonable"
failure to pay royalties after written demand for payment. Coastal filed
a counter-claim, asking the court for declaratory judgment that it was
entitled to a signed division order before disbursing royalties to Coates. 
Coastal also filed a response to Coates's motion for summary judgment,
as well as a cross-motion, contending its suspension of royalties was
not wrongful or unreasonable and that Coates's written demand for
payment was invalid. The trial court granted Coates's motion for
summary judgment and terminated the F lease.(2) By agreement, the
summary judgment terminating the F lease was severed and made
final. 

 By its second issue, Coastal asserts the trial court erred in granting
summary judgment and in denying its cross-motion for summary
judgment because Coates failed to give proper notice of the unpaid
royalties. 

 The party moving for summary judgment has the burden of
showing that no genuine issue of material fact exists and that it is
entitled to judgment as a matter of law. See Tex R. Civ. P. 166a(c);
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548
(Tex.1985). In deciding whether a disputed material fact issue
precludes summary judgment, the reviewing court will take as true all
evidence favoring the non-movant. See Nixon, 690 S.W.2d at 548-49;
Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex. 1984). Every
reasonable inference from the evidence will be indulged in favor of the
non-movant, and any doubts will be resolved in his favor. See Nixon,
690 S.W.2d at 549; Montgomery, 669 S.W.2d at 311. 

 Generally, an oil and gas lease can be terminated only if there is
breach of a special limitation or a condition subsequent. See Linton E.
Barbee, The Lessor's Remedies for Non-Payment of Royalty, 45 Tex. L.
Rev. 132, 158 (1966). Breach of a covenant, in contrast, subjects a
party to liability for damages, or in extraordinary cases, allows for a
conditional decree of cancellation. See Hitzelberger v. Samedan Oil
Corp., 948 S.W.2d 497, 506 (Tex. App.­Waco 1997, pet. denied) (citing
Rogers v. Ricane Enterprises, Inc., 772 S.W.2d 76, 79 (Tex. 1989);
Parten v. Cannon, 829 S.W.2d 327, 329-30 (Tex. App.­Waco 1992, writ
denied)). Non-payment of royalty will not typically terminate a lease, "in
the absence of a specific clause to that effect." Morris v. First Nat. Bank
of Mission, 249 S.W.2d 269, 279 (Tex. Civ. App.­San Antonio 1952,
writ ref'd n.r.e). However, parties may contractually provide for an
express condition subsequent, which allows the lessor the option of
terminating the lease upon the lessee's failure to pay royalty. See 
Linton E. Barbee, The Lessor's Remedies for Non-Payment of Royalty,
45 Tex. L. Rev. 132, 159 (1966). Here, the lease included an express
condition subsequent that the lessor could terminate the lease if the
lessee wrongfully or unreasonably withheld royalty payments for a
period of thirty days after the lessor's written demand for payment. See
Hitzelberger, 948 S.W.2d at 506 (construing a clause that provided, "[i]f
said initial royalty payment is not so made under the terms hereof, this
lease shall terminate[,]" as a special limitation or condition). Therefore,
pursuant to the express terms of the lease, summary judgment was
proper and Coates was entitled to terminate the lease if: (1) Coastal
failed to pay royalties on a timely basis; (2) Coates gave Coastal a
written demand for payment; and (3) Coastal wrongfully or
unreasonably withheld such payment for a period of thirty days
following the demand. 

 The evidence is undisputed that Coastal did not pay royalties on
the F-6 well. Coastal challenges that it received an adequate written
demand and that it wrongfully or unreasonably withheld payment. 
Regarding the written demand, Coastal complains that Coates did not
identify the performance necessary to avoid termination of the lease. As
Coastal notes, the written demand letter did not refer to non-payment
of royalties on the F-6 well, and the demand was not limited to the F
lease. Instead, the letter demanded payment for all unpaid royalties on
the E and F leases. Coastal also notes the written demand did not
indicate that Coates had any problems with the form division order that
Coastal had sent. Coastal contends that this generic demand was
inadequate notice of non-payment of royalty and that it failed to provide
an opportunity to cure the non-payment.

 An oil and gas lease is a contract and must be interpreted as a
contract. See Hitzelberger, 948 S.W.2d at 503 (citing TSB Exco v. E.N.
Smith, III Energy Corp., 818 S.W.2d 417, 421 (Tex. App.--Texarkana
1991, no writ)). As with any contract, the intent of the parties is
controlling. See Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726,
727-28 (Tex. 1981). We must construe the oil and gas lease disfavoring
forfeiture. See Cambridge Oil Co. v. Huggings, 765 S.W.2d 540, 542-43
(Tex. App.­Corpus Christi 1989, writ denied) (citing Reilly v. Rangers
Management Inc., 727 S.W.2d 527, 530 (Tex. 1987)); see also TSB
Exco, Inc. v. E.N. Smith, III Energy Corp., 818 S.W.2d 417, 422 (Tex.
App.­Texarkana 1991, no writ) (rule of construction that courts must
construe lease against lessee does not apply when such construction
would cause forfeiture).

 According to Coastal, the written demand provision in the lease
required Coates to give Coastal notice of the particulars of the default
and an opportunity to cure. Coastal contends courts are strict in
assessing the sufficiency of the notice given by lessors. However, the
authority relied upon by the treatise cited by Coastal states, "[t]he
authorities hold that the prerequisite of notice to forfeit contained in a
lease must be literally complied with." Deace v. Stribling, 142 S.W.2d
564, 566 (Tex. Civ. App.­Austin 1940, no writ).

 In this case, the lease required "written demand of payment," and
did not require the lessor to explain the particulars of the breach. By
sending Coastal a written demand for payment without spelling out the
particulars of the default, Coates literally complied with the demand
provision. Courts apply lease clauses as written and refuse to imply
terms not found within the four corners of the document. See Sun Oil
Co., 626 S.W.2d at 732-33; Smith v. Liddell, 367 S.W.2d 662, 665-66
(Tex. 1963). Because the lease stated that the lessor was required to
give written demand, and did not require the lessor to specify how the
lessee had defaulted, Coates's written demand complied with the terms
of the lease.

 Coastal also argues the notice was deficient based on the parties'
dealings subsequent to the execution of the lease. First, Coastal notes
Coates had returned division orders sent to it by Coastal in the past, and
sometimes provided its own form division orders. Therefore, Coates
knew that Coastal expected to receive the signed division order. 
Second, Coates had previously made demands for unspecified
underpaid royalties for different leases, using the same form demand
letter. Because the demand letter for the F lease did not indicate
whether it was for unpaid or underpaid royalties and looked virtually
identical to the prior letters, Coastal maintains that Coates did not
provide adequate notice of default. 

 When the terms of a lease are unambiguous, the parties' objective
intent is determined by the language of the lease itself without resort to
parol evidence. See Madeley, 626 S.W.2d at 731; Hutchings v.
Chevron U.S.A., Inc., 862 S.W.2d 752, 757 (Tex. App.--El Paso 1993,
writ denied). Only after a contract is found to be ambiguous may parol
evidence be admitted for the purpose of ascertaining the true intentions
of the parties expressed in the contract. See Friendswood Dev. Co. v.
McDade + Co., 926 S.W.2d 280, 283 (Tex. 1996). A contract is
ambiguous if, after applying the established rules of construction, it
remains reasonably susceptible to more than one meaning. See Coker
v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). Parol evidence cannot be
admitted for the purpose of creating an ambiguity. See Nat'l. Union Fire
Ins. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995). 

 Here, the lease is worded so that it can be given a definite
meaning, and is not ambiguous. Under the terms of the lease, Coates
was required to provide Coastal with a written demand that Coastal pay
royalties owed. Thus, evidence of dealings between the parties may
not be considered. We conclude Coates literally complied with the
demand provision of the lease. The lease did not require Coates to
identify the particulars of nonpayment,(3) and while we construe the
lease against forfeiture, we may not read such a requirement into the
lease. There is no genuine issue of material fact that Coates gave
Coastal written demand as required in the lease. We overrule
appellant's second issue. 

 By its first and third issues, Coastal contends the trial court erred
in granting summary judgment, and in denying its cross-motion for
summary judgment because it did not wrongfully or unreasonably fail
to pay royalties.

 In its pleadings and summary judgment evidence, Coastal
maintained that it suspended royalty payments because Coates failed
to sign its division order for the F-6 well. As Coastal notes, a lessee is
entitled to withhold royalty payments pending receipt of a signed
division order. See Tex. Nat. Res. Code Ann. § 91.402(c)(1) (Vernon
Supp. 2000). Therefore, Coastal contends it did not act wrongfully or
unreasonably in withholding royalty payments. Coastal responds that
it did not sign the division order because it contained an unauthorized
provision relating to indemnification, and therefore, Coastal was
unjustified in withholding payments. 

 As previously discussed, the lessor was entitled to terminate the
lease if the lessee wrongfully or unreasonably withheld royalty. Thus,
we must determine whether Coastal acted wrongfully or unreasonably
in withholding royalty as a matter of law. The reasonableness of
Coastal's actions is arguably a fact issue because even if Coastal was
unjustified in withholding royalty based on Coates's failure to sign the
division order, Coastal may have acted reasonably considering the
parties' dealings with one another and based on its good faith
interpretation of the division order statute. The lease, however,
permitted Coates to terminate if Coastal unreasonably or wrongfully
withheld payments. Thus, we must determine whether Coastal
wrongfully withheld payments. 

 "Language used by parties in a contract should be accorded its
plain grammatical meaning unless it definitely appears that the intention
of the parties would be thereby defeated." Lyons v. Montgomery, 701
S.W.2d 641, 643 (Tex. 1985). Black's Law Dictionary defines
"wrongful" as "injurious, heedless, unjust, reckless, unfair; it implies
the infringement of some right, and may result from disobedience to
lawful authority." Black's Law Dictionary 1110 (6th ed. 1991). 
Webster's Dictionary defines "wrongfully" as "unjustly; in a manner
contrary to the moral law or to justice. . . ." Webster's New Twentieth
Century Dictionary 2112 (2d ed. 1980). Webster's also defines
wrongful as "full of wrong; unjust, unfair or injurious," and "unlawful." 
Id. 

 The F lease provided "[i]t shall not be considered that royalty or
other payments out of production (or any portion thereof) are being
wrongfully or unreasonably withheld if the same is withheld by virtue
of or resulting from any law, order, directive or regulation of any
governmental or regulatory body having jurisdiction." Therefore, if
Coastal withheld payment in accordance with the natural resources
code, which permits withholding of royalty payments pending receipt
of a signed division order, it was not acting wrongfully under the terms
of the lease. From this provision, it appears the parties intended to use
the plain, ordinary, and generally accepted meaning of the term
wrongfully; thus, Coastal wrongfully withheld royalty payment if it did
so unjustly or unlawfully. 

 The Texas Natural Resources Code provides that a payor is entitled
to receive a signed division order from a payee as a condition for the
payment of proceeds from the sale of oil and gas. See Tex. Nat. Res.
Code Ann. § 91.402(c)(1) (Vernon Supp. 2000). However, "[i]f an owner
in a producing property will not sign a division order because it contains
provisions in addition to those provisions provided for in this section,
payor shall not withhold payment solely because of such refusal." See
id. § 91.402(e). Section 91.402(c)(1) expressly limits the provisions that
the division order for oil and gas production may contain. See id. §
91.402(c)(1). Regarding indemnification, that section states that the
division order may only contain, "unless otherwise agreed, . . . an
agreement to indemnify the payor and reimburse the payor for
payments made if the payee does not have merchantable title to the
production sold." Id. § 91.402(c)(1)(C) (emphasis added). 

 The division order for the F-6 well contained a provision stating
the "owner agrees to indemnify and hold payor harmless from all
liability resulting from payments made to the owner in accordance with
such division of interest, including but not limited to attorney fees or
judgments in connection with any suit that [affects] the owner's
interest to which payor is made a party." The lease, however, was
expressly executed without warranty of title. The parties had, therefore,
otherwise agreed not to indemnify Coastal with respect to title. 
Consequently, the division order indemnity provision did not comply
with section 91.402(c)(1)(C) and Coastal was not entitled to withhold
payment on that basis. See id. § 91.402(e). 

 Coastal urges that it complied with section 91.402(d) of the code,
which provides an alternative form of division orders. However, this
section provides the division order form for "oil payments." See id. §
91.402(d). Because the F-6 well was a gas well, section 91.402(d) was
inapplicable; the division order for the F-6 well must have complied
with 91.402(c)(1). 

 Coastal argues that although section 91.402(d) commences with
language that it is the division order form for oil payments, it also
applies to gas payments. First, Coastal notes that subsection (d) is an
alternative to subsection (c), and that subsection (d) may satisfy the
provisions of subsection (c). The relevant portion of subsection (d),
however, provides, "[i]n the alternative, the provisions of Subsection (c)
of this section may be satisfied by a division order for oil payments in
substantially the following form and content . . . ." Id. § 91.402(d)
(emphasis added). Subsection (c)(1), by contrast, provides the
authorized provisions for a division order for "the sale of oil and gas
production. . . ." Id. § 91.402(c)(1). 

 Coastal next asserts 91.402(d) applies to gas payments because
the division order form from that subsection contains the following
statement, "[t]his agreement does not amend any lease or operating
agreement between the interest owners and the lessee or operator or
any other contracts for the purchase of oil or gas." Id. § 91.402(d). This
text is found at the beginning of the division order form, prior to the
actual provisions of the division order. A reading of the entire
subsection, however, demonstrates that it only applies to oil payments. 
The division order form from section 91.402(d) provides, in part:

 The following provisions apply to each interest
owner ("owner") who executes this agreement:


 TERMS OF SALE: The undersigned will be paid in
accordance with the division of interests set out
above. The payor shall pay all parties at the price
agreed to by the operator for oil to be sold
pursuant to this division order. . . .


 PAYMENT: From the effective date, payment is to
be made monthly by payor's check, based on this
division of interest, for oil during the preceding
calendar month from the property listed above. .
. .


Id. § 91.402(d) (emphasis added). Furthermore, as discussed, the
subsection begins by stating that it will serve as a division order form
for oil payments. 

 Coastal also contends section 91.402(d) applies to gas payments
because the general provisions found in that section apply to both oil
and gas production. We find this argument unpersuasive. The usage
of terminology in one section that is used throughout the natural
resources code does not lead to the inference or conclusion that
subsection (d) applies to oil and gas when it expressly states it applies
to oil payments.

 Finally, Coastal asserts there is no logical reason for treating oil
and gas differently for purposes of division orders. Section 91.001(2)
of the natural resources code defines "gas" as "natural gas," while
section 91.001(3) defines "oil" as "crude oil and crude petroleum oil." 
See id. §91.001(2), (3). Thus, the legislature distinguished between the
two terms in the code. "When the Legislature employs a term in one
section of a statute and excludes it in another section, the term should
not be implied where excluded." Laidlaw Waste Sys. (Dallas) v. Wilmer,
904 S.W.2d 656, 659 (Tex. 1995). Notably, the legislature made other
distinctions between oil and gas in the code, including providing a
longer time period for gas payments to be made as compared to oil
payments. See Tex. Nat. Res. Code Ann. § 91.402(a) (Vernon Supp.
2000).

 We hold that section 91.402(d) applies to oil but not gas
payments. Because the division order for the F-6 well contained terms
in addition to those specified in section 91.402(c)(1), Coastal could not
withhold royalty payments based upon Coates's failure to sign and
return the division order. See id. § 91.402(e). Coastal's withholding of
royalty was not authorized by the natural resources code and was
therefore unlawful and wrongful. Moreover, Coastal was not entitled
to rely upon the provision in the lease providing that withholding of
royalty payments was not wrongful or unreasonable if done under "law,
order, directive or regulation of any governmental or regulatory body
having jurisdiction." It was wrongful for Coastal to withhold payments
in light of its failure to comply with the division order statute. 
Accordingly, there is no genuine issue of material fact that Coastal
wrongfully withheld royalty. The trial court did not err in granting
summary judgment terminating the F lease for Coastal's nonpayment
of royalty on the F-6 well or in denying Coastal's cross-motion. 
Appellant's first and third issues are overruled. 





 The judgment of the trial court is AFFIRMED. 


 NELDA V. RODRIGUEZ

 Justice


Publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this the 31st day of August, 2000.


1. We refer to Coastal and Coates in the singular for purposes of
clarity, while recognizing they constitute multiple parties. 
2. By granting summary judgment in favor of Coates, the trial court
necessarily denied Coastal's cross-motion. See Tex. R. App. P.
33.1(a)(2)(A). 
3. An example of a clause in a lease requiring the lessor to indicate
the specifics of the breach is found in 4 Howard R. Williams & Charles
J. Meyers, Oil & Gas Law § 682.1, at 340 (1984) (citing Ridl v. EP
Operating Limited Partnership, 553 N.W.2d 784 (N.D. 1996)). The
clause provides, in relevant part, "In the event the Lessor considers that
Lessee has failed to comply with an obligation hereunder, express or
implied, Lessor shall notify Lessee in writing specifying in what respect
Lessor claims Lessee has breached this lease. . . ."